The next case on calendar for argument is State Farm v. Penske Truck Leasing. Counsel for Appellants, please proceed. Thank you, Your Honor. May it please the Court, I'd like to reserve two minutes for rebuttal. My name is Scott Hofer for Appellants, Penske Truck Leasing and Old Republic Insurance Company. Your Honor, this case is pretty simple and it requires reversal of the trial court's summary judgment order and judgment in favor of State Farm. We're here under de novo review. The district court erred in two ways. First of all, it erred in finding certain language in Penske's truck rental agreement ambiguous when it's clearly not, and also in failing to properly apply rules of contract construction. Me, Counsel, can I ask you just a threshold? I mean, it seems to me one thing that we need to grapple with is the California appellate court decision that you've pointed us to, Golden Eagle v. Penske Truck, which seems to come out exactly your way, but it's an unpublished opinion. And so help me understand. I mean, traditionally, we will defer to state appellate court decisions for a statement of state law, but I just haven't come across it yet where it's an unpublished opinion. And so what do we do with that here? Here's what we should do with that. It is an unpublished opinion, but that does not mean that it's incorrect. It is very well written. It takes on every single issue in this appeal, analyzes them, and is a very well written document. While it's certainly not binding, it is certainly something that the court can look at because it is very, very helpful. But in addition to that case, which was a 2015 case from the 4th District, there's also a published opinion from 2020 that is Penske v. Safeco from the United States. The Connecticut case. It's the Connecticut case. It takes on these issues, too, and that is a published opinion. Here's why I'm asking this question, though, because I agree with you that the California appellate court decision is well reasoned. It's thorough. It's a bit of a stump to me why it's unpublished because it's actually more analyzed than a lot of published opinions. But doesn't that signal something to us about whether we should rely upon it? Because it seems to be, for whatever reason, the California Court of Appeal was hesitant to put that out there as a definitive statement of California law. And one reason why I'm suspect of that opinion being consistent with California state law is California law, unlike Connecticut law and many other states, is very clear that you look at the layman's understanding for contract interpretation. And therefore, I mean, the only way that you get to your result is to say that the basic automobile liability policy means what the state statute says it means. And that seems to be what the California Court of Appeal did. But that whole train of thought seems inconsistent with what the California Supreme Court has told us to do with these contracts. So that's what I'm trying to work through. Right. And obviously, I have no way of answering the first part of that question, which was why the opinion was not published. The only reason I can speculate is that the rules of law and the law that went into that opinion are so well settled as to how you analyze contract interpretation and that this Penske-Reynold agreement is so clear. Well, but that's my question. I'm not sure they are so well settled because if I didn't have that opinion, I would have said basic automobile policy is not liability policy is not well understood by the layperson. It's not even consistently used by the parties in this case. Lawyers, trained lawyers. And so if it's not, then I would find it ambiguous. And so that's my question is how much the fact that it's unpublished, do we need to discount that? And if we believed that that was inconsistent with California contract interpretation principles, wouldn't that further undermine the Golden Eagle case? I don't think the Golden Eagle case is undermined at all. In fact, one of the other cases in our brief that addressed these issues said that it would be absurd to interpret the language in Penske's contract to mean that it was anything other than a minimum limit, basic automobile. And I respectfully disagree. I actually think that the language, if I were reading this in a vacuum, I think you'd have a very tough case. I got to be honest with you, because I mean, the contract itself says, check here if you've provided your own one million dollars of liability. If you haven't or doesn't even say if you haven't, it says, or you can purchase liability insurance from Penske for twenty dollars a day, doesn't ask to verify how much insurance is there. I would say as a standard lay person, I would have thought I was getting the one million dollars. Otherwise, I mean, you didn't have a separate verify that you have your separate insurance, but you can still buy Penske. So here's why respectfully, I think that that's incorrect. What that contract asked to do is it gave the customer a choice. And what we're dealing here is we're dealing with freedom of contract and the case law. There's no doubt about that. The question is, what were their expectations when they went in and got the Penske Plus? Why would anybody ever get it? And more to the point. The question is what a reasonable. Excuse me, counsel. You've got a layered problem. I just want to give you an opportunity to respond to all that if we could wrap it in. The first layer is the one Judge Nelson mentioned, which is we have to predict what the California Supreme Court would do. And they've taken a pretty dim view of policy provisions that don't and I appreciate this is a rental agreement, but where a limit isn't clearly identified. And the second part of the problem, I think, is the express language of the rental agreement you're pointing to is just one half of the, as Judge Nelson pointed out, two different choices that the customer was given. So I just want to give you a chance to take a run, your best shot at both of those. OK. So let me see if I can take all of those on because there are about 10 points made in there. And the beginning of that is to reemphasize that these parties have freedom of contract. And I think that's the starting point. And the customer was given a choice to add Penske to its own policy, which it already got, that was a million dollar policy. All it would have had to have done was get a certificate of insurance. It chose to not do that. It chose the option that is in front of us now. The case law that we cited in the brief says Penske only, it does not have to offer full coverage. It can offer whatever it chooses to offer. And it did that. And here's where I think I get to your questions is there is a distinction under the California Vehicle Code that distinguishes these terms of art that are in this contract. And the term that Penske used in option one is automobile liability insurance policy. That is in Division 7 of the Vehicle Code. And that is, as the other cases we cited. But see, now you just get into the whole problem I have, which is that you're going through an analysis that, as I read California state law, is prohibited. California state law, in clearly defined principles by the California Supreme Court, says you cannot do what you are just saying we should do. It says you don't presume that an individual knows what a subtle reference to state law would be. And that's where I'm hung up. I don't disagree with that statement in a vacuum. But what I do disagree with is that these terms, automobile liability insurance policy, that is in the Vehicle Code. And case after case says, and there is a case that we cite that says you have to give a term of art the meaning that it is given. In automobile liability. No, no, no. It doesn't say that. It says you have to give it the term of art that the contract gives it. And that's the problem, is you're grafting in a term of art used in the code into the contract. And that seems to be, I'm going back to the same point, but this is my hang up, is that California Supreme Court says, no, stop. Do not go here. Don't do this. Let's take it this way then. Because even if you say that, even if we suppose that a reasonable person would not know what an automobile liability insurance policy is, you still have to interpret the language of this policy. And you can't use that phrase standing alone. You have to use that phrase along with its other limiting language, which is the phrase, with limits as required by the state financial responsibility law. And I don't think- Or other applicable statute. Right. Or other applicable statute would be, this is a multi-state contract. That would be triggered in a case that doesn't have a financial responsibility law. Because your, as you correctly noted, that phrase, there's no comma there. Let's look at that phrase. With limits as required by the state financial responsibility law or other applicable statute. That's one phrase with no comment. That phrase has to, under the rules of contract construction, be taken in conjunction with the phrase in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the vehicle is operated. So even if we are going to start with the premise that a reasonable person wouldn't understand the policy, we still have to use proper construction rules and look at those two phrases together. So if you look at the phrase basic automobile liability insurance policy and complete the two phrases together with limits as required by the state financial responsibility law, there is no reasonable interpretation other than California's minimum limits of 1530 apply to the basic automobile liability insurance policy. So while I appreciate your question, Your Honor, it is solved by the fact that when you apply proper rules of contract construction to this language and read these two phrases together, which we have to do- Is a mandate that's inflexible? Is that your position, counsel? I think that in application to this language, I think it is inflexible. There is only one way- Why is that? Why is that? Because the way that we, the language that is in front of us here and the phrases being separated by commas, that rule states that you have to consider the limiting phrase, which is with the state financial responsibility law in conjunction with and being tied to the basic automobile liability policy. But you would agree that- Otherwise that phrase is standing on its own. Sorry, Your Honor. Otherwise that language just floats out there. But two points. One is I was trying to get you to answer whether your position is that the last antecedent rule is absolute and inflexible. And you just, I don't know that you answered the question except to say you read it that way. And the second problem I've got is that we typically apply the last antecedent rule to, you know, to a list, which you're not doing here. But just maybe could we focus on the first question? Do you read it as an inflexible rule? I've never seen any authority that says it's an inflexible rule, so I can't respond to that. All I can do is say in the context of the language we are looking at, it has to be inflexible because if not, you would have this phrase with limits as required by the state financial responsibility law or other applicable statute would be floating out there, not connected to any antecedent. So the language that we have here, it has to be tied to something. So- It would be tied to the agreement to provide liability coverage. It would be tied to the phrase- On page one, we have in massive font that this is a truck rental agreement. So one way to interpret it as ambiguous would be that that phrase that you're keying on modifies the provision of coverage language, sir. You have to look at this language as- I'm looking at it. You have to written- Right. And you have to look at sentences. Let me- Phrases. I mean- Right. I mean- Let me come back at this a different way. I understand your position that you've got basic automobile liability insurance policy. What if it just said the state, the limits are as required by the state financial responsibility law or other applicable statute. And it didn't mention basic automobile liability. You would agree that the state financial responsibility law is different for a residential vehicle as opposed to a commercial vehicle. Andy, yes. Correct? So that would be ambiguous. I don't agree that that's ambiguous. We have to- No, it would be ambiguous if you didn't have basic automobile liability insurance policy. If it just said you get the limits consistent with state financial responsibility law, would you agree that that would be ambiguous? That standing alone, I don't know if I would agree with ambiguity. You would need to read the rest of the paragraph, right? So I guess the only- And the only reason I emphasize that is because everything still rolls back to what's the understanding of basic automobile liability insurance policy. And what I can say to that, your honor, is that the cases that I've cited, and there are three cases that address this, that say- I understand. I understand. You've got some courts that go your way on this, but- Well, not only the courts, but the California legislature. Because the California legislature put the vehicle code out there. And in two different sections of the code, they talk about two different types of... They talk about basic automobile liability coverage. And in another section, they talk about motor vehicle liability coverage. And they're vastly different. And the legislature did this. And we have to look at what the legislature has done and put it in context. And they did that for- Right on this point. I think your point is very well taken, sir, and really well articulated. Just help me out with the position that you're making about a term of art adopted by the legislature. And how do we reconcile that with our duty to predict what the California Supreme Court would do, please? Well, the California Supreme Court is going to look at what the legislature has done. And they are going to look at the vehicle code and determine from the vehicle code what the legislature intended to do. And that- And what if they were interpreting a statute? But our problem is that we're trying to figure out what a lay person would do with this. Isn't that what we have to... That's what I'm trying to get you to focus on. Well, you only get to that point if the rules of contract construction and looking at this contract don't give us an answer. When we apply the rules of contract construction, and in my view and my position is that these phrases in this paragraph are clear and explicit. And if they're clear and explicit, the court's job is to give them their meaning as they appear in black and white. And it's only if they're not clear and explicit, do we then go into the other rules of construction, which is what would the reasonable contracting party expect these to be? That's what we need to get to that here. And so your position is that the California Supreme Court wouldn't get to this issue about what a lay person, how a lay person would read this contract? They absolutely would not. Because what they would do is they would look at this language. I'll take yes. I'm just trying to understand your position. Thank you. All right, counsel. I think you exceeded your time. We'll give you a minute for rebuttal. If you didn't, you're very close. But we'll give you a minute or two for rebuttal. Thank you, Your Honor. All right, counsel. Good morning. My name is Robert Brosh. I represent State Farm Mutual Automobile Insurance Company. May it please the court. Penske Truck Rentals and Old Republic would have this court believe that every commercial renter of a commercial truck must possess a green eye shade and a fine print. This is not what California law applies. Okay. So can I ask you about that? Because I'm with you up to everything you said until you said this is not what California law requires because we're reading Golden Eagle. And yes, it's an unpublished opinion, but it seems to reject every single argument that you're raising. And so why don't we, I mean, traditionally, we deferred even to a California Court of Appeals decision, unless we are convinced that the California Supreme Court would reach the opposite result. Why don't we just defer to that opinion and say, look, we might have done this differently, but a California Court of Appeals judge said, this is how we have to interpret this contract. There's any number of reasons why a Court of Appeals decision is not published many times, even the California Supreme Court. But is that what this hinges on? Is that what, if this, okay, let's hypothetically say it was a published opinion. Would this case come out differently? Yes, because we would be distinguishing that case. But in this particular case, what's really important is the California Supreme Court in Haynes versus Farmers has set forth that any policy of insurance must be plain, clear, and conspicuous. It must contain language that is clearly placed, that puts the customer on notice of any limitation. And it must be in language that is understandable to ordinary lay person. Counsel, that's a general policy, but the California Court of Appeal addressed this specific language. And so that's why Judge Nelson's question is so important. Are you familiar with our decision in employer's insurance of Wausau versus Granite State Insurance Company? Are you familiar with that case? No, I'm not. It seems to say that we consider even unpublished California decisions in predicting how the court would rule. Are you familiar with that case? No, I'm not, Your Honor. It's in note eight of that decision. And so if you take my word for it, that we have ruled that way, what does that do to your argument regarding the effect of the decision? Well, I would say that it doesn't apply because it didn't consider the same facts and circumstances as what we have here. But it's a general proposition that in predicting how the California Supreme Court would rule, we may consider unpublished dispositions. Yes, but what one Court of Appeal does in an unpublished decision is not an indication of how the California Supreme Court would rule. And the California Supreme Court has already ruled that with regard to visions that limit coverage to the financial responsibility limit, that there's a very strict test that must be followed, that the provisions be plain, clear and conspicuous. And in this particular case, that test does not pass muster for numerous reasons. In this case, the most important thing is if you go out and buy any kind of insurance policy on the market, the agent, the insurance company, they're going to give you a coverage sheet that's going to have a summary that's going to tell you how much coverage you bought. But isn't that the point that was made by Penske, that they're not an insurance brokerage firm, and this was just in a rental agreement as opposed to a traditional insurance product? Well, that doesn't give them the right to be deceptive, Your Honor. And what's more important is that... Was it deceptive to include the language that it's in accordance with the liability insurance policy? Is that deceptive? Yes, it is, because most laypersons would not know what that meant. And if I could get back to my point, there are two cases, Hertz versus Home Insurance Company and Grand Rent-A-Car versus 20th Century Insurance Company. Both of those were to protect them against bodily injury or property damage arising out of the use of the rental car. The court in those two cases held that even though the rental car company was not an insurance company, this met the definition of an insurance contract so that any limitation that did not comply with the insurance code was not enforceable. That was the Hertz versus Home case. And in the Grand Rent-A-Car case, the court said that because it's an insurance policy, we can apply the rules of ordering payment among multiple insurers to that insurance. So because this is considered to be an insurance policy and Penske admits that they're selling insurance to indemnify the renter, at least to the minimum financial responsibility limit, they are stepping in the shoes of an insurance company and they're backed by an insurance company because they purchased insurance with Old Republic Insurance Company that has a blanket additional insured endorsement that covers everybody that Penske agrees to cover subject to the same limits of coverage. So there is insurance here. We've named Old Republic in this case as a defendant. They're represented by the same counsel. And the fact that Penske has stepped into this role as acting like an insurer and they're charging money for a product, for an insurance product, they have an affirmative duty to place the language in very clear and conspicuous terms. It has to be conspicuously placed. It needs to be upfront in this agreement. It needs to the dollar amount. There's no, you have to read six, I'm sorry, eight pages into this agreement before you even find any terms on the type or amount of insurance. And no amount- Counsel, could we stop you for a moment? The clock has disappeared. Olivia, could you please reassert the clock? Thank you. The lawyers usually like when that happens. Right. This is Kwame. We're working on the clock. All right. Thank you, Kwame. All right. Please proceed, counsel. Yes. So the agreement is not conspicuous because there's no table of contents. There's no headings. There's nothing that tells the customer how much insurance he's getting. And remember, the customer for a commercial rental is bound to provide insurance to Penske of a million dollars or buy Penske's insurance. The customer needs to be told how much they're buying. A commercial trucking company who's renting a 23,000-pound vehicle is not going to expect the type of coverage that would be on a private passenger vehicle. This whole argument about basic automobile coverage for private passenger vehicles is misleading because that's not what was being rented. The commercial transaction here was a very large truck. This trucking company could not operate this vehicle on a public highway with only, if all there was, was a 1530 policy. That trucking company doesn't need it. What's also... Counsel, could I ask on that point just... Sure. Is the rental agreement that was used the form that's at ER-789? This isn't a trick question. ER-789 has a front page of a rental agreement that's got, you know, very large font. It says truck rental agreement. But I want to make sure I'm not making an incorrect assumption. I want to make sure that's the form that was used. I can give you the page reference in our supplemental ER. That'll work. That'll work. Okay. And I think it's important to actually look how this reads because this is like a trifold type brochure. That's why we're looking at it. The truck rental agreement in our supplemental excerpts of record is from SCR-93 through SCR-102. And I have just sort of a related question. Did the $20 go to Penske or did it go to Old Republic? And by the way, I have SCR-95. Is the truck rental agreement paid? It's the same front cover, so maybe you've answered my question, but... The $20 was collected by Penske. We don't know what they did with the money. Okay. But what I was trying to point out is if you look at the actual rental agreement, you have to read six pages in before you even get to the insurance section. And the requirement of insurance is based on there being a commercial rental. And the term commercial rental is very expressly defined in this rental agreement. That's at page SE- Could I back up that page? Now we're looking at the SCR-100. And the top part of the page actually refers to A, household rental, liability insurance. And it says Penske agrees to provide liability coverage for that in that circumstance, I believe. Correct. And then you go to B, which is commercial renter liable. And then you have the choice. Penske provides coverage versus the customer, right? If you look at the definition of commercial rental on SCR-96, it basically defines the commercial rental as the rental of a vehicle to transport business, goods or property, or indeed goods owned by someone other than the customer to which the customer is being compensated for moving. This is almost exactly the language from vehicle code section 3601, which defines a commercial vehicle to include not only one that exceeds 10,000 pounds, but one that is being used, but it means any other motor vehicle used to transport property for compensation. State Farm can hardly rely on the technicalities, the terms of art in the vehicle code if you're going to argue that Penske can't. It seems to me that we're looking at, and I think we've telegraphed this pretty clearly, we're looking at what the California Supreme Court would do in trying to figure out, I think they say we look at this in terms of a layperson. I'm trying to figure out why this cover says truck rental agreement in huge font. And then the six pages later, as you mentioned, there's actually one provision that deals with a commercial, sorry, a household rental, and then the other with a commercial. So if I saw this actual policy, I don't know why the household would even be in there. Is this truck rental agreement just a sort of a cover, and the actual contract was flipped in there depending on whether, maybe perhaps a different cover, depending on whether it's a household rental versus a commercial rental? Or why is the household provision even in there? In my experience, this is just a generic form that Penske uses for all rentals, and they modify it with the cover sheet. The rental cover sheet. And the rental cover sheet says that this is a commercial rental, and it's... Well, the cover sheet says truck rental agreement. Is that what you're referring to? It doesn't say commercial, does it? Oh, just the title page, but I'm talking about, there's actually a printed cover sheet that's... Oh, I know what you mean. Okay, yeah. So, Council, Polson Council has cited us to several cases that have interpreted this exact language and ruled in favor of Penske's interpretation. Is there any case that you can cite to us that has interpreted this language and agreed with your interpretation of the language? No, we haven't found any, Your Honor. So, we're relying on basic principles of California law as enunciated by the California Supreme Court. I could distinguish the cases that Penske has cited from other district courts, because they didn't consider... District courts within the Ninth Circuit. Excuse me? District courts within the Ninth Circuit. No, they were district courts in other... There was only the Nevada case, the... Isn't there one in California as well? Not a district court case. I thought there was a district court case from California as well. I apologize, but I don't recall that case. Yeah. But the Nevada case, one of the reasons why the court adopted Penske's argument is this vehicle in that situation was not a commercial vehicle under Nevada law, because it was not being used to transport goods for someone else. It was the property that... Truck renter. And so, that was the New York Marine versus Penske case. The case... It doesn't rely on the contract interpretation question that we're grappling with. Right. Yeah. Although the contract did contain that language. Right. So, here, just the reasonable trucker who's renting a truck for commercial purposes and the Rosie's agent for Penske knows that they're a commercial carrier. Objectively, the parties are contracting to provide truck insurance for a motor carrier. They're not contracting to provide insurance for some private passenger vehicle that only needs 1530 policy. So, these very hyper technical arguments work the reasonable expectations of the parties. You have to give mutual... You have to give effect to the mutual intentions of the parties. And there were certainly... It was reasonable for L&L Logistics owner to believe that he was getting coverage that would meet his financial responsibility limits, not 1530 policy. There's no need for that. This is just a windfall for Penske to get another 20 bucks without really providing any type of protection. Isn't anything that would have satisfied the financial responsibility of this customer operate that vehicle? It's just a complete windfall for them. And it's just basically shows that if you're going to be in the rental business, you need to be straightforward with your customers as to what they're buying. And Penske did not do that here. And we're entitled to a ruling affirming that the trial court is in. It was very well reasoned. It applies the California Supreme Court holding in the Haynes case. And if it doesn't pass muster under Haynes, the limitation is just simply not enforceable. All right, counsel. Thank you. You've exceeded your time. Are there any other questions? All right, rebuttal. Let's start with two minutes. Right. Your Honor, if I could make some quick points. First of all, the windfall argument being very disingenuous when we look at and give some context to what's going on here. Because State Farm, the appellee in this case, issued a $1 million policy. They've stipulated that it applies. It does apply. And what they are trying to do is shift the indemnity that they contracted and collected a premium for to Penske. When Penske sold- Counsel, I think that's one of your weaker arguments. I wouldn't spend a lot of time on it. Because, I mean, there's no question Penske got a windfall. All State Farm is doing is applying normal- I mean, any insurer would go after someone who was- if there was primary insurance. I guess I can't agree with the word windfall because Penske provided- You're getting $20 a day for basically providing nothing. $15,000 is what we contracted for and- I understand that. But there was evidence in the record. You just started out on a weak point. So I don't want to belabor this. I want to give you time. But, I mean, they were paying $6 a day for a million dollars. You're charging $20 a day for a tenth of that. So the windfall has clearly hurt you. Sorry. Sorry, Your Honor. When we buy and lease our own cars, we don't pay the same as when we go and get a car rental either. So it's the same thing. I don't think that that's a proper comparison. But to Judge Rawlinson's question, I think the case you may have been searching for was a California-United States district- I wasn't searching for it. I was asking about it. You were asking. I think that's what you were asking for. And the reason that case is important is because that case draws this distinction and talks about how the legislature has distinguished between a motor vehicle policy and a commercial motor vehicle policy. And that's very important because what Appley's argument does is completely flips on the head what the law says our job in looking at this contract is. We can't just go and start this analysis by saying what's a reasonable trucker's expectation. You have to first analyze the policy under the rules of contract construction to see if it is clear and explicit. And it is. And the other two rules that are very important that need to be applied is that you can't rewrite this contract and add language that's not there. And in order to find against Penske and in favor of the Appley, you would have to read into this contract commercial vehicle liability insurance, motor carrier of property, motor carrier property permit act. Those phrases and words are nowhere in this language. And the rules of contract construction say we cannot read them in there. And the rules under California law also say that we must give words that have regular uses, their usage, their special meaning. And the legislature and the courts have said the phrases we are talking about have regular usage and meaning. Automobile liability insurance policy, motor vehicle liability insurance policy. Two different things, two different areas in the code require different reporting. State farms sold a motor vehicle liability policy. And you know what they had to do? They had to certify their million dollars to the DMV. And when we sell a minimum limit policy that is an automobile liability financial responsibility compliant policy, we don't have to do that. And there are a lot of other differences too. So we have to honor what the legislature has done by creating two different types of coverages, putting it in two different parts of the legislation. And when they have different usages and meaning, we are duty bound to honor that. And we can't make up a distorted interpretation of these words and distort the rules of contract interpretation to come up with a strained, inappropriate analysis of this contract language. And that's what Appleby has done. And this contract is clear and this court should reverse the district court order. All right. Thank you, counsel. Thank you to both counsel for your helpful argument. The case is submitted for decision by the court. The final case on calendar, Albana v. Garland has been submitted on the brief that completes our calendar for today. We are in recess until 930 a.m. tomorrow morning. Thank you, judges and counsel members. This court for this session stands adjourned.
judges: Rawlinson, Christen, R. Nelson